UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 20-cv-80780-MATTHEWMAN

WEST PALM BEACH ACQUISITIONS, INC.,
d/b/a Greenway Kia West Palm Beach, and
FLORIDA DEPARTMENT OF HIGHWAY
SAFETY & MOTOR VEHICLES,

      Plaintiffs,

vs.

KIA MOTORS AMERICA, INC.,

      Defendant.

_____/

> FILED BY____KJZ____D.C.
>
> **Apr 25, 2022**
>
> ANGELA E. NOBLE
> CLERK U.S. DIST. CT.
> S. D. OF FLA. - West Palm Beach

## ORDER ON THE PARTIES' MOTIONS
## FOR SUMMARY JUDGMENT [DEs 85, 92, 100, 131]

**THIS CAUSE** is before the Court upon Defendant, Kia Motors America, Inc. c/k/a Kia America, Inc.'s ("Defendant" or "KMA") Motion for Partial Summary Judgment [DE 85] and Plaintiff, West Palm Beach Acquisitions, Inc. d/b/a Greenway Kia West Palm Beach's ("Plaintiff" or "Greenway") Motion for Summary Judgment [DEs 92, 100, 131].[1] The parties have filed Statements of Material Fact and evidence to support their motions, have responded and replied to each motion for summary judgment, and have filed supplemental authority. *See* DEs 86, 93, 94, 101, 107, 108, 109, 113, 114, 123, 124, 125, 129, 130, 132, 133, 134, 135. The Court held a hearing on the motions via Zoom video teleconference on April 18, 2022, and heard argument from counsel for the parties. The matters are now ripe for review, and the Court has carefully considered the filings and attachments thereto, the arguments of counsel, and the entire docket in this case.

---

[1] The sealed, unredacted version of the motion is at DE 100. The public versions are at DEs 92 and 131.

## I.     THE PENDING COUNTS FROM THE COMPLAINT [DE 1]

Plaintiff's Complaint contains four counts against Defendant: violation of section 320.641, Florida Statutes—Unlawful Termination and Mandatory Stay (Count I); violation of section 320.64(7), Florida Statutes—Unlawful Termination in the Alternative to Count I (Count II); violation of section 320.64(7), Florida Statutes (Injunctive Relief) (Count III); and violation of section 320.64 (42)(a), Florida Statutes (Unlawful Sales Performance Metric) (Count IV). *See* Compl., DE 1. Plaintiff has agreed to voluntarily dismiss Count II. [DE 104 at 2]. Plaintiff has also agreed to dismiss Count IV, but solely to the extent Count IV seeks money damages. *Id.*

## II.     UNDISPUTED FACTS

The following facts are drawn from the uncontested portions of the record together with the parties' respective statements of material facts ("SMF") [DEs 86, 93, 108, 114, 125, 130, 132, 134][2] and supporting affidavits and declarations [DEs 86-1, 108-1, 124, 130-1, 135, 148].

Defendant is the exclusive distributor of Kia motor vehicles in the United States. [Def.'s SMF ¶ 1]. Plaintiff is a licensed Kia dealer doing business as Greenway Kia West Palm Beach. [Def.'s SMF ¶ 2]. Plaintiff and Defendant are parties to a Kia Dealer Sales and Service Agreement dated July 18, 2012, as amended (the "Dealer Agreement"). [Def.'s SMF ¶ 3]. The Dealer Agreement authorizes Plaintiff to sell and service Kia vehicles from its location in West Palm Beach. [Pl.'s SMF ¶ 2]. Plaintiff is one of ten dealerships owned and operated by the Greenway Auto Group in KMA's Southern Region. [Pl.'s SMF ¶ 3].

---

[2] Defendant's SMF is at DE 86. Plaintiff's SMF is filed under seal at DE 101 and in public, redacted form at DE 132. Defendants' Response to Plaintiff's SMF and Additional Facts is filed under seal at DE 108 and in public, redacted form at DE 130. Plaintiff's Reply Statement of Material Facts is solely filed under seal at DE 134 and has not been filed publicly.

Under the Dealer Agreement, Plaintiff agreed to "vigorously and aggressively sell and promote Kia productions" wherever sold, and also to "vigorously and aggressively promote, solicit, and make sales of Kia Products within its APR." [Def.'s Resp. to Pl.'s SMF ¶ 4]. The Dealer Agreement does not specify how KMA determines whether Plaintiff is "vigorously and aggressively" selling and promoting Kia Products, nor does it set forth a minimum level of sales Plaintiff must achieve to comply with Articles II(i) an IX(B)(1). [Pl.'s SMF ¶ 5].

Dealer Sales Efficiency ("DSE") is not referenced in the Dealer Agreement. [Pl.'s SMF ¶ 7]. Defendant assigns each dealer a geographic territory called an Area of Primary Responsibility ("APR"). [Pl.'s SMF ¶ 8]. APRs are comprised of census tracts defined by the U.S. Census Bureau. *Id.* Census tracts are typically assigned to the closest dealer, with certain exceptions to account for road networks, natural barriers, and consumer shopping patterns. *Id.* A "registration" refers to a motor vehicle that a customer registers through a state agency at an address within a referenced geographic area. [Def.'s Resp. to Pl.'s SMF ¶ 9]. DSE is a fraction expressed as a percentage where the numerator is the dealer's nationwide retail sales, and the denominator is the dealer's expected sales. [Pl.'s SMF ¶ 11]. Manufacturers that use a metric similar to DSE include General Motors, Stellantis, and Honda; there are no manufacturers that utilize a sales performance metric fundamentally different from DSE. [Pl.'s SMF ¶ 15].

Defendant normally reports DSE in 12-month blocks. [Pl.'s SMF ¶ 17]. DSE uses historical registration data. [Def.'s Resp. to Pl.'s SMF ¶ 18; Pl.'s SMF ¶ 18]. According to Defendant, any variation between sales and expected sales is attributable to dealer operations and effort rather than factors outside of the dealer's (specifically, Plaintiff's) control. [Pl.'s SMF ¶ 19].

Sharif Farhat, one of KMA's experts in this case, has analogized sales effectiveness metrics to a weathervane. [Pl.'s SMF ¶ 20; Def.'s Resp. to Pl.'s SMF ¶ 20]. Mr. Farhat believes that sales

effectiveness as a metric is a "good place to start. It's a good starting point to compare groups of dealers to identify variation between those dealers. That's what I'm using it to mean." [Pl.'s SMF ¶ 21; Def.'s Resp. to Pl.'s SMF ¶ 21]. He also believes that a "single sales effectiveness score for a snapshot in time" is "not appropriate and that's different than the change over time." *Id.* Mr. Farhat thinks that sales effectiveness scores alone are not grounds for terminating a dealer, even when the dealer has scores below expected levels for years. [Pl.'s SMF ¶ 22; Def.'s Resp. to Pl.'s SMF ¶ 22]. Mr. Farhat thinks that a "deeper dive" should occur before issuing a termination notice. [Pl.'s SMF ¶ 24; Def.'s Resp. to Pl.'s SMF ¶ 24]. Mr. Farhat's expert report in this action includes a "likely cause" analysis identifying Plaintiff's gross profit and advertising as likely causes for its sales performance. [Pl.'s SMF ¶ 25; Def.'s Resp. to Pl.'s SMF ¶ 25].

Defendant's other expert in this case, M. Laurentius Marais, testified that a "performance measurement system … need not be designed to be a reliable measure of some part of the empirical world." [Pl.'s SMF ¶ 33; Def.'s Resp. to Pl.'s SMF ¶ 33]. Mr. Marais also testified that a performance metric is effective if it "advances the goal of the principal." [Pl.'s SMF ¶ 34; Def.'s Resp. to Pl.'s SMF ¶ 34].

By letter dated June 8, 2018 ("DII Letter"), Defendant informed Plaintiff that its sales were unsatisfactory, and that Plaintiff had been put in the Dealer Improvement Initiative ("DII"). [Pl.'s SMF ¶ 36]. According to Defendant, DII is "aimed at improving the performance of dealers that are failing to comply with its [sic] Kia Dealer Sales and Service Agreement." [Pl.'s SMF ¶ 37]. The DII Letter identified the following purported deficiencies: Plaintiff's DSE score, lease penetration, capitalization, and service retention; however, the DSE Score is not specified to be a stand-alone deficiency. [Pl.'s SMF ¶ 38; Def.'s Resp. to Pl.'s SMF ¶ 38]. While the DII Letter is

dated June 8, 2018, the data Defendant cites is from March 2018. [Pl.'s SMF ¶ 40; Def.'s Resp. to Pl.'s SMF ¶ 40].

Defendant established a "Cure Period" that ran from the date Plaintiff received the DII Letter until January 2, 2019, but this Cure Period was later extended to September 30, 2019. [Pl.'s SMF ¶ 42; Def.'s Resp. to Pl.'s SMF ¶ 42]. During the Cure Period, Plaintiff's "DII sales objective [was] to achieve and maintain, or make substantial progress towards achieving and maintaining, a DSE score that [was] no worse than 10% below the Dealership's expected sales." [Pl.'s SMF ¶ 43]. Defendant calculated a monthly sales target of 129 units. [Pl.'s SMF ¶ 44]. Neither the Dealer Agreement nor the DII Letter defines the term "substantial progress." [Pl.'s SMF ¶ 45]. While what constitutes "substantial progress" is subjective, Defendant would consider a 20-point improvement in a DSE score to be one indication of "substantial improvement relative to the state metric," and, in order to determine whether a dealer "achieved and maintained" substantial progress, it would look more holistically "in the context [of] what the dealer had achieved in the past" and "other a period of time." [Pl.'s SMF ¶ 46; Def.'s Resp. to Pl.'s ¶ 46].

Throughout the Cure Period, Defendant's personnel Nicholas Verna and Daniel Valdes visited Plaintiff and documented their visits in "Contact Reports." [Pl.'s SMF ¶ 49]. Defendant's personnel routinely completed the Contact Reports after field visits to dealerships. [Pl.'s SMF ¶ 50]. The Contact Reports included rankings showing Plaintiff's sales in the District and Region and its DSE score. [Pl.'s SMF ¶ 51].

On or about February 12, 2020, Defendant sent Plaintiff a communication entitled "Notice of Termination," advising Plaintiff that the Dealer Agreement would terminate on the ninety-first day after Plaintiff's receipt of the Notice of Termination. [Def.'s SMF ¶ 4]. While the Termination Notice is dated February 12, 2020, the DSE data is from November 2019, which Defendant writes,

is "the most recent period for which we have registration data." [Pl.'s SMF ¶ 63]. In support of the conclusions in the Notice of Termination, Defendant relied upon the data and metrics cited in the Notice of Termination. [Def.'s Resp. to Pl.'s SMF ¶ 76].

On May 12, 2020, Plaintiff filed its Complaint and sought, among other things, an immediate stay of the termination, which is automatically provided for under section 320.641(3), Florida Statutes. [Def.'s SMF ¶ 5]. Defendant consented to the stay of termination. [Def.'s SMF ¶ 6]. To date, the Dealer Agreement has not been terminated, and Plaintiff continues to operate as a Kia dealer. [Def.'s SMF ¶ 7].

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).   If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

## IV.    **DISCUSSION AND ANALYSIS**

### A. Count I: Violation of F.S. § 320.641 – Unlawful Termination and Mandatory Stay)

In its Motion for Summary Judgment, Plaintiff makes the following primary arguments: (1) that DSE cannot be used as a basis to terminate Plaintiff's franchise because DSE consists of stale data, and Defendant's implementation of DSE as a contractual requirement is flawed and inherently unfair; and (2) courts and administrative agencies across the United States have found that sales effectiveness metrics like DSE violate state dealer laws. [DE 131 at 10–20].

Defendant responds that there are genuine issues of material fact as to whether Defendant had good-faith reasons to issue the Notice of Termination and whether Defendant applied the grounds for termination in a uniform and consistent manner. [DE 129 at 7–12].

In reply, Plaintiff contends that there is no material issue of fact that it was treated unfairly in violation of section 320.641(3), Florida Statutes. [DE 123 at 2–4]. Plaintiff also argues that Defendant failed to do a "deeper dive," meaning that it should have evaluated likely causes of Plaintiff's performance. *Id.* at 4–8. Finally, Plaintiff asserts that Defendant relies on "inapposite case law." *Id.* at 8–10.

Count I is a cause of action based on section 320.641(3). Section 320.641(3) states that a franchise cancellation is unfair:

> if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; is not undertaken for good cause; or is based on an alleged breach of the franchise agreement which is not in fact a material and substantial breach; or, if the grounds relied upon for termination, cancellation, or nonrenewal have not been applied in a uniform and consistent manner by the licensee.

§ 320.641(3), Fla. Stat. The licensee (in this case, Defendant) has the burden of proof that the cancellation was fair and not prohibited. *Id*.

There is somewhat of a dearth of case law interpreting the above statute. However, with regard to the "good faith" and "good cause" prongs of section 320.641(3), a court in the Middle District of Florida has determined that Florida courts would likely apply "principles of contract law when analyzing whether a termination was in good faith under Fla. Stat. § 320.641(3)." *Cent. Buick, GMC, Inc. v. Gen. Motors LLC*, No. 8:15-CV-2393-T-27AAS, 2017 WL 2819807, at *5 (M.D. Fla. June 28, 2017). The court further noted that a question of good faith is generally reserved for the trier of fact. *Id.* at *6 (citing *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F. Supp. 2d 1300, 1303 (S.D. Fla. 1999), *aff'd,* 333 F.3d 1248 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S. Ct. 2611, 162 L.Ed. 2d 502 (2005)); *Guardian Alarm Co. of Mich. v. May,* 24 F. App'x. 464, 470 (6th Cir. 2001); *Berges v. Infinity Ins. Co.,* 896 So. 2d 665, 680 (Fla. 2004)). The court in *Central Buick* ultimately opted to

deny summary judgment on the issues of good faith and good cause and then also denied summary

judgment on the issues of whether the breach of the dealership agreement was a material and

substantial breach and whether the grounds relied upon for termination, cancellation, or

nonrenewal had been applied in a uniform and consistent manner by the licensee since the Court

was already denying summary judgment on the "good faith" and "for good cause" prongs. *Cent.*

*Buick, GMC, Inc.*, 2017 WL 2819807, at *6.

The Court agrees with this analysis and finds that, upon careful review of the record in his

case, genuine issues of material fact preclude the entry of summary judgment as to Count I in favor

of Plaintiff as to whether the franchise cancellation was undertaken in good faith and as to whether

it was undertaken for good cause.[3] Additionally, there are clear genuine issues of material fact

regarding Count I as to whether the grounds relied upon for termination have been applied in a

uniform and consistent manner by Defendant. *See, e.g.*, Def.'s Resp. to Pl.'s SMF ¶¶ 75–98 and

Pl.'s Reply Statement of Material Facts [DE 134], which is filed under seal. Many of the facts

upon which Plaintiff relies on as evidence that it was treated unfairly in its Motion for Summary

Judgment have been disputed in full or in part by Defendant. The Court rejects Plaintiff's counsel's

argument at the April 18, 2022 hearing that there are sufficient undisputed facts to support the

granting of summary judgment in Plaintiff's favor as to Count I at this juncture. Furthermore,

challenges to Defendant's methodology for assessing Plaintiff's performance go to the weight of

---

[3] Plaintiff tries to distinguish *Central Buick* because it was decided "before the enactment of Subsection (42)." [DE 123 at 9]. This argument is without merit. While section 320.64(42)(a) may inform section 320.641(3), it did not supersede it. Moreover, Plaintiff's subsection (42) claim was raised in Count IV, while its section 320.641(3) claim was raised in Count I. This demonstrates that even Plaintiff recognizes that the two statutes provide for different relief. *Central Buick* discusses section 320.641(3), which is still in effect. The fact that section 320.64(42)(a) was enacted after *Central Buick* is therefore marginally relevant at best.

the evidence and cannot be resolved on summary judgment. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248.

The Court also notes that the fact that other courts in other states (outside of Florida) have found that sales effectiveness metrics similar to DSE violate other state dealer laws is in no way binding on the Court and does not affect the analysis of the issues currently before the Court on summary judgment, as this Court is applying Florida law. The Court also points out that the parties agree that several manufacturers use a metric similar to DSE, including General Motors, Stellantis, and Honda, and that there are no manufacturers that utilize a sales performance metric fundamentally different from DSE. [Pl.'s SMF ¶ 15].

Based on the foregoing, summary judgment must be denied in Plaintiff's favor as to Count I.

B. <u>Count II: Violation of F.S. § 320.64(7) (Unlawful Termination in the Alternative to Count I)</u>

In its Motion for Partial Summary Judgment [DE 85], Defendant seeks summary judgment on Count II of Plaintiff's Complaint. In its Response, Plaintiff states that it has "agreed to voluntarily dismiss Count II (which was asserted in the alternative)." [DE 113 at 1]. In its Reply, Defendant states that it "of course accepts Greenway's voluntarily dismissal of Count II, but that it should be reflected in an order dismissing the claim with prejudice." [DE 136 at 2].

In light of the parties' representation and in light of the fact that Plaintiff has never filed dismissal papers or a motion pursuant to Rule 41, summary judgment is granted in favor of Defendant and against Plaintiff as to Count II.

C. <u>Count III: Violation of F.S. § 320.64(7) (Injunctive Relief)</u>

In Count III of Plaintiff's Complaint [DE 1], it alleges as follows:

Sections 320.641 and 320.64(7) prohibit KMA from terminating, or threatening to terminate, Plaintiff's franchise unless it meets the statutory requirements to do so. Plaintiff, in Counts I-II, has set forth that KMA's threatened termination violates sections 320.641 and 320.64(7), and establishes that KMA does not have statutory authority to terminate Plaintiff's franchise. Counts I and II adequately allege a statutory violation based upon the threatened termination, which "shall be sufficient to authorize the issuance of an injunction" that halts KMA from terminating Plaintiff's Dealer Agreement. §320.695, Fla. Stat.

[Compl. ¶ 92]. As Plaintiff has voluntarily dismissed Count II, and the Court has declined to enter summary judgment on Plaintiff's behalf as to Count I, the Court cannot enter summary judgment in favor of Plaintiff as to Count III. Plaintiff's Motion for Summary Judgment is denied as to Count III.

### D. Count IV: Violation of F.S. § 320.64(42)(a) (Unlawful Sales Performance Metric)

In its Motion for Partial Summary Judgment [DE 85], Defendant seeks summary judgment on Count IV of the Complaint, arguing that damages are an essential element of Plaintiff's claim under section 320.64, Florida Statutes, and that there is no evidence that Plaintiff has suffered any damages. [DE 85 at 5–8].

In Plaintiff's Response, Plaintiff explains that it has agreed to "forgo money damages under Count IV." [DE 113 at 1]. However, it makes three arguments in opposition to Defendant's Motion: (1) a pecuniary loss is not required under section 320.64; (2) Plaintiff is entitled to recover nominal damages; and (3) Plaintiff is entitled to an injunction as an alternative remedy to nominal damages. *Id.* at 2–9.

In Defendant's Reply, Defendant contends that section 320.697, Florida Statutes, requires proof of damages and Plaintiff is mistakenly focusing on section 320.64, Florida Statutes, which deals with standing. [DE 136 at 3]. Defendant next argues that nominal damages are not available

11

under section 320.697. *Id.* at 5–7. Finally, Defendant asserts that Plaintiff should not be permitted to amend its complaint to seek an injunction. *Id.* at 7–10.

The Florida Automobile Dealer's Act ("the Florida Dealer's Act") was passed "to ensure fair dealing at all levels among all participants in the distribution and sale of motor vehicles, and to redress the economic imbalance which naturally exists between national manufacturers and local dealers." *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 533 (11th Cir. 1994). Section 320.64 of the Florida Dealer's Act lists conduct that is a violation of the Act. *Copans Motors, Inc. v. Porsche Cars N. Am., Inc.*, No. 14-60413-CV, 2014 WL 2612308, at *2 (S.D. Fla. June 11, 2014); *see also Fitzgerald Motors, Inc. v. FCA US LLC*, No. 819CV02661MSSAAS, 2020 WL 10359983, at *5 (M.D. Fla. June 26, 2020). A dealer harmed by such a violation, "notwithstanding the existence of any other remedies under §§ 320.60–.70, has a cause of action . . .   for damages." § 320.697, Fla. Stat. Additionally, a dealer harmed by such a violation, "notwithstanding the existence of any adequate remedy at law, . . . is authorized to make application to any circuit court of the state for a grant . . . of a temporary or permanent injunction, or both . . . ." § 320.695, Fla. Stat. A dealer who alleges a violation of section 320.64, Florida Statutes, "shall be entitled to pursue all of the remedies, procedures, and rights of recovery available under §§ 320.695 and 320.697." § 320.64, Fla. Stat.

Section 320.64(42), which was added to the Dealer Act in 2017, prohibits manufacturers from using unfair performance standards. It states in relevant part the following:

> (42)(a) The applicant or licensee has established, implemented, or enforced criteria for measuring the sales or service performance of any of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which:
>
> 1.   Are unfair, unreasonable, arbitrary, or inequitable; or

> 2. Do not include all relevant and material local and regional criteria, data, and facts. Relevant and material criteria, data, or facts include, but are not limited to, those of motor vehicle dealerships of comparable size in comparable markets . . . .

*Id.* The House of Representatives Staff Analysis "Summary Analysis" of HB 1175 stated:

> The bill prohibits manufacturers from taking certain actions against motor vehicle dealers and requires certain procedures be followed by the manufacturer when dealing with motor vehicle dealers. Specifically, the manufacturer:
> . . . .
> May not implement performance-measuring criteria that may have a material or adverse effect on a dealer, are unfair, unreasonable, arbitrary, or inequitable, or do not include all relevant criteria, data and facts.

Florida Staff Analysis, H.B. 1175 (March 31, 2017).

As Plaintiff did not seek injunctive relief in Count II of the Complaint [DE 1], Plaintiff can only proceed at this point under section 320.697 with regard to damages, as discussed further below. In fact, Plaintiff solely cites section 320.697 as the basis for damages in Count II of the Complaint. Section 320.697, entitled "Civil damages," states in its entirety that

> Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70, has a cause of action against the licensee for damages and may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss, together with costs and a reasonable attorney's fee to be assessed by the court. Upon a prima facie showing by the person bringing the action that such a violation by the licensee has occurred, the burden of proof shall then be upon the licensee to prove that such violation or unfair practice did not occur.

§ 320.697, Fla. Stat.

"The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *United States v. Silva*, 443 F.3d 795, 797–98 (11th Cir. 2006); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530

13

U.S. 1, 6 (2000) (Where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."); *see also United States v. Isac Schwarzbaum*, No. 18-CV-81147, 2020 WL 2526500, at \*2 (S.D. Fla. May 18, 2020), *appeal dismissed* (Nov. 25, 2020), *amended sub nom. United States v. Schwarzbaum*, No. 18-CV-81147, 2020 WL 5076979 (S.D. Fla. Aug. 27, 2020), *vacated and remanded,* 24 F.4th 1355 (11th Cir. 2022), and *appeal dismissed sub nom. United States v. Schwarzbaum*, No. 20-12061-HH, 2020 WL 7212711 (11th Cir. Nov. 25, 2020)

The clear language, and thus meaning, of the statute is that Plaintiff must have already "suffered pecuniary loss" or have been "otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70." § 320.697, Fla. Stat. Here, Plaintiff contends that its "changes to its business operations and the very fact of this litigation is evidence of DSE's material effect on Greenway." [DE 113 at 4]. It further contends that it has "incurred expenses and implemented operational changes to meet KMA's demands, and operates with uncertainty about whether it will be able to meet its DSE targets in the future." *Id.* at 4. According to Plaintiff, it has additionally "suffered the adverse effect of the loss of control of its dealership operations and having an overbearing micromanager (KMA) influencing its day-to-day decision making and autonomy." *Id.* Plaintiff relies on *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005), as to this last point.

As an initial matter, the court in *Danvers* discussed loss of control of dealership operations in a completely different context. In that case, the court was determining whether a dealer's loss of freedom to run its business as it saw fit qualified as a form of injury under Article III. Injury is not the same as damages. The language and findings in *Danvers* are not applicable in the case at hand.

Next, while Plaintiff does allege that it has incurred expenses, implemented operational changes, lost control of its dealer operations, and currently operates with uncertainty, Plaintiff fails to identify record evidence to support its position. In its response to Defendant's Motion for Partial Summary Judgment, Plaintiff refers the Court to its Statement of Material Facts at paragraphs 6, 10, 29, 38, 43, and 59. [DE 113 at 5]. The Court cannot even begin to decipher how the facts in those paragraphs support Plaintiff's position that it has been "otherwise adversely affected." Moreover, it seems clear that Plaintiff's alteration of business practices, which it argues DID improve its sales, could not constitute Plaintiff being adversely affected.

Plaintiff also argues that, if the Court does find damages are a "required component," it has suffered nominal damages or is entitled to an injunction as an alternative remedy to nominal damages. [DE 113 at 5–9]. The Court notes that Plaintiff's counsel conceded at the April 18, 2022 hearing that it must be able to establish some sort of damages to proceed on Count IV and reaffirmed that it is not seeking actual damages. Plaintiff's counsel's argument at the hearing was instead that the "otherwise adversely affected because of a violation by a licensee" language in section 320.697 implies that nominal damages are permissible because otherwise the language would be meaningless.

The Court cannot infer nominal damages into a statutory cause of action. *See Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1336 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008); *see also Beverly Health & Rehab. Servs., Inc. v. Freeman*, 709 So. 2d 549, 552 (Fla. 2d DCA 1998) (explaining that, when a statute allows for "actual" damages, such language suggests that such damage must be more than technical or nominal and also noting that the legislature has specifically provided for nominal damages awards in certain statutory causes of

actions). There is no mention of nominal damages in section 320.697, nor has Plaintiff cited any authority which supports its position that this specific statute allows for nominal damages.

The Court also rejects Plaintiff's position that it is entitled to injunctive relief under section 320.695, Florida Statutes. As stated above, Plaintiff did not plead injunctive relief in Count II of the Complaint, and Plaintiff's counsel conceded at the hearing that it is inherently seeking leave to amend its complaint since injunctive relief is like a "lesser included offense" of compensatory damages. The Court agrees with Defendant that Plaintiff cannot suddenly request such relief now so close to trial and after the close of discovery. Moreover, Plaintiff has somewhat misdirected the Court in its Reply by citing cases in which the plaintiffs did seek injunctive relief in their complaints.

In sum, Plaintiff has not demonstrated that it is entitled to any type of damages and has insufficiently supported its argument with record evidence that it has been adversely affected by Defendant's conduct. In its Response to Defendant's Motion for Partial Summary Judgment, Plaintiff initially contends that it "is entitled to a binding determination that DSE is unlawful so that it cannot be used by KMA to evaluate Greenway's sales performance now, or in the future." [DE 113 at 2]. But, in the conclusion section of the same Response, Plaintiff asks that the Court deny summary judgment and permit Plaintiff "to pursue nominal damages under Section 320.697 or, in the alternative, injunctive relief under Section 320.695." *Id.* at 10. These inconsistent requests further support the Court's determination that it would lead to an absurd result if the Court permitted Plaintiff to proceed on Count IV when Plaintiff has conceded it is not entitled to monetary damages, and the Court has determined that Plaintiff is not entitled to nominal damages or injunctive relief. In other words, on a practical level, permitting Plaintiff to present evidence on Count IV would be a waste of the Court's and the parties' valuable time. In so deciding, the Court

16

is not prejudicing Plaintiff who has remaining pending counts in the Complaint which allege violations of the Florida Dealer's Act. The Court finds that summary judgment should be granted in Defendant's favor as to Count IV. In light of foregoing, there is no need to consider Plaintiff's arguments in its Motion for Summary Judgment as to this count as Plaintiff's request for summary judgment in its favor as to Count IV is without merit.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Partial Summary Judgment [DE 85] is **GRANTED**. Summary judgment is hereby entered in favor of Defendant as to Counts II and IV of the Complaint. It is also hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [DEs 92, 100, 131] is **DENIED**.

Counts I and III of the Complaint shall proceed to a bench trial, as agreed to by the parties [DE 143]. All pending issues shall be resolved at the upcoming trial where the trier of fact will have an opportunity to hear and consider all the relevant and probative evidence and make credibility determinations.

The case is specially set for a trial beginning on Monday, May 23, 2022, at 9:00 a.m. before United States Magistrate Judge William Matthewman at the U.S. Courthouse located at 701 Clematis Street, Courtroom Six, Third Floor, West Palm Beach, Florida. The parties and their counsel shall be ready and present in-person for the trial at that time. The parties are also reminded that a calendar call is set for 2:00 p.m. on May 18, 2022, before the undersigned at the same location.

       **DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 25th day of April, 2022.

 

                             WILLIAM MATTHEWMAN
                             United States Magistrate Judge